UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-225-GWU

SAMUEL GROSS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

08-225 Samuel Gross

>   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
>   4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
>   5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

08-225  Samuel Gross

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-225  Samuel Gross

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Samuel Gross, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc/joint disease, chronic pain syndrome, obesity, and borderline intellectual functioning. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Gross retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 20-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 46-year-old man with a high school education with work experience as a custodian, fast food worker, and assistant manager, could perform any jobs if he were limited to "light" level exertion and also had the following non-exertional restrictions. (Tr. 42-3, 93). He: (1) could no more than occasionally climb, stoop, kneel, crawl, crouch, reach overhead, or push and pull using his shoulders, and (2) had a moderately limited ability to understand, remember, and carry out detailed instructions, interact appropriately with the general public, and respond

08-225 Samuel Gross

appropriately to changes in the work setting, which resulted in an ability to understand and recall simple material, concentrate and persist at simple tasks for two-hour intervals and respond to routine changes in an object-focused setting with little public contact. (Tr. 43). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 44-5).

On appeal, this court must determine whether the factors included in the hypothetical question are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to a variety of problems, but at the hearing he primarily described musculoskeletal pain including a back injury and shoulder problems. (Tr. 34-7). He felt that his back and shoulder problems had begun in 2002 when, while working as an assistant manager at a pizza restaurant, a van drove through a brick wall and caused a computer monitor and a refrigerator to hit him in the shoulder and on the side. (Tr. 34-5). No surgery had been recommended, and he continued working until July of 2005, when he had a problem with diverticulitis causing a colon abscess. (Tr. 33-4, 205).[1]

Prior to ceasing work, the plaintiff was given pain management treatment by Dr. Sai P. Gutti from February, 2003 until April, 2005. (Tr. 180-99). He was noted

---

[1] The plaintiff does not allege continuing difficulties from his 2005 bowel condition.

08-225 Samuel Gross

to have tenderness and spasms of the neck, left shoulder, leg, and lumbosacral spine, as well as the sacroiliac joints. Dr. Gutti provided injections, ordered tests, and advised the plaintiff, who weighed 255 pounds, to lose weight. (Tr. 199-201). Dr. Gutti reviewed an MRI report showing mild degenerative disc disease with arthritic changes at L3-4 and L4-5, and advised the plaintiff to "take care of his back when he has to work" and not lift more ten pounds at a time. (Tr. 189). It does not appear that this was a permanent weightlifting restriction, however, since it was not repeated over the course of Dr. Gutti's remaining treatment, and the physician also indicated some improvement with injections and medication. Mr. Gross was usually described as being in no acute distress with normal motor strength and reflexes, moderate tenderness, and pain on extreme abduction of the left shoulder. (Tr. 181).

Also from the period prior to the plaintiff's alleged onset date, Dr. Charles Hieronymus conducted an examination for worker's compensation purposes in 2003 and also reviewed the MRI showing degenerative disc disease. (Tr. 334-5). He also reviewed some of Dr. Gutti's office notes. Although he found some spasms, tenderness, and decreased range of motion of the shoulders, Dr. Hieronymus found no restrictions on work activity. (Tr. 335-7).

The plaintiff was examined on one occasion by Dr. W. R. Stauffer at the request of the Commissioner. Dr. Stauffer apparently had no records to review at the time of his October 12, 2006 examination, and he stated that no diagnostic

studies had been ordered.  He found tenderness, a slight decrease in flexion and abduction of the shoulders and a decreased range of motion of the spine.  (Tr. 367). Motor strength testing was normal, although it caused back pain, as did walking on the heels and toes, and squatting was limited to one-half the normal distance.  Dr. Stauffer recommended lifting limits of 20 pounds occasionally and 10 pounds frequently and opined that Mr. Gross would probably have difficulty with repetitive pushing and pulling with his shoulders, repetitive climbing of ladders, ropes, and scaffolds and repetitive stooping, kneeling, crouching, crawling, and reaching overhead.  (Tr. 368).

A state agency physician, Dr. Timothy Gregg, reviewed the evidence as of February 5, 2007, and mentioned having reviewed an MRI from "2004."  (Tr. 424). He opined that the plaintiff would have essentially the same non-exertional restrictions as Dr. Stauffer had outlined, although Dr. Gregg specified a lifting ability of 50 pounds occasionally and 25 pounds frequently.  (Tr. 423-9).

Subsequently, the plaintiff submitted office notes from Dr. Anthony deGuzman, who had apparently become his treating family physician in May, 2005. (Tr. 418). Dr. deGuzman treated the plaintiff regularly from that date on, prescribing medication such as Celebrex, Lorcet, and Flexeril for left shoulder and low back pain.  (Tr. 391-418, 479-95).

08-225 Samuel Gross

Dr. deGuzman provided a medical assessment form dated February 25, 2007 which limited the plaintiff to lifting 5 to 10 pounds occasionally and (inconsistently) 10 to 20 pounds frequently, standing or walking a total of one to two hours in an eight-hour day (no more than 30 to 60 minutes without interruption), sitting to the same limits, occasionally performing most postural activities, and indicating that Mr. Gross had a need to avoid hazards, such as heights and moving machinery as well as temperature extremes, chemicals, dusts, noise, fumes, and vibration. Dr. deGuzman opined that Mr. Gross's pain was severe enough to interfere with his attention and concentration "frequently," that he would take unscheduled breaks every 15 to 30 minutes for 5 to 10 minutes, and that he would be absent from work more than four days per month. The physician cited as reasons left shoulder tendonitis and an MRI dated May, 2003 showing a degenerative disc and disc bulge of the lumbar spine. (Tr. 431-7).

The ALJ rejected Dr. deGuzman's restrictions, which clearly preclude full-time work, on the grounds that they were not supported by his own office notes or by the other medical evidence of record. The plaintiff challenges this conclusion on appeal, noting that, as a treating physician, Dr. deGuzman is entitled to greater weight than a one-time examiner such as Dr. Stauffer, and that Dr. Gregg, the state agency reviewer, did not have the opportunity to review Dr. deGuzman's findings.

08-225 Samuel Gross

The regulations and case law are clear that the opinion of a treating physician is entitled to great weight, but that it does not automatically receive controlling weight if it is not supported by sufficient medical evidence. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). If the treating physician's opinion is not given controlling weight, the ALJ must weigh a number of factors set out in 20 C.F.R. § 404.1527(d), including the length of the treatment relationship and frequency of examination, the nature and extent of the relationship, the evidence provided to support it, its consistency with the record as a whole, the specialization of the source, and other factors such as the amount of familiarity of the medical source with disability programs. Id.

In the present case, the ALJ primarily discounted Dr. deGuzman's opinion because of the lack of supporting evidence and explained the reasons for his conclusion in considerable detail. (Tr. 20-3, 25). His conclusions are supported by substantial evidence. Dr. deGuzman's initial office visit contains physical examination results which included an indication that the plaintiff was ambulating without difficulty, had no sensory or motor deficits, equal and brisk reflexes, and a full range of motion of the right shoulder. (Tr. 419). There was tenderness to palpation of the left shoulder with abduction limited to 135 degrees, only a slight reduction in the normal range of 150 degrees. (Tr. 369-419). Cervical spine flexion was 45 degrees, with 60 being normal, lateral flexion was 30 degrees, with 45 being

normal and extension was 30 degrees, with 75 degrees being normal. (Tr. 419). Mr. Gross could flex his lumbar spine forward 80 degrees, almost within normal limits. (Tr. 370, 419). Dr. deGuzman reviewed the prior MRI, and diagnosed left shoulder bursitis and lumbar spasm. (Tr. 420). He advised the plaintiff to avoid only "strenuous" activities. Subsequently, the physician's notes, while covering an extended period of time, provide very little detail other than mentioning tenderness and decreased range of motion. An MRI of the left shoulder in September, 2006 showed only "mild" AC joint impingement and tendonosis. (Tr. 396). As the ALJ noted, there was no evidence of a worsening of the plaintiff's condition and there was no requirement for significant adjustments in medication or referrals for other treatment. (Tr. 22). Nor did the plaintiff follow the physician's advice to lose weight, and he denied taking any regular exercise at a recent visit to a chiropractor. (Tr. 22-3). In addition, the chiropractor indicated an improvement in the plaintiff's shoulder, neck, and lumbar pain with treatment. (Tr. 451).

The court notes that the consultative examiner did not have knowledge of the lumbosacral MRI results, whereas Dr. deGuzman apparently did have these available. However, Dr. Gregg was also aware of the MRI results when he completed his opinion. Therefore, this is not a case where the treating physician possessed critical objective studies which were unavailable to the sources relied upon by the ALJ. In view of the fact that Dr. deGuzman's examination results were

08-225  Samuel Gross

not greatly dissimilar from those of the previous sources whose opinions were accepted by the ALJ, a reasonable fact finder could have concluded that the fairly extreme restrictions listed by Dr. deGuzman were not supported by sufficient objective evidence so as to require medical expert review before they could be discounted, as suggested by the plaintiff.  Therefore, under the facts of this case, the court concludes that the administrative decision was supported by substantial evidence.

The decision will be affirmed.

This the 9th day of October, 2009.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge